1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT

8                    EASTERN DISTRICT OF CALIFORNIA

9

10   ERIC VALENCIA,                          Case No. 1:24-cv-01477-EPG (PC)

11                  Plaintiff,               ORDER TO ASSIGN A DISTRICT JUDGE

12        v.                                 FINDINGS AND RECOMMENDATIONS,
                                             RECOMMENDING THAT THIS ACTION
13   DAVID BALAKIAN, *et al.*,               BE DISMISSED, WITHOUT PREJUDICE,
                                             FOR FAILURE TO STATE A CLAIM,
14                  Defendants.              FAILURE TO PROSECUTE, AND
                                             FAILURE TO COMPLY WITH A COURT
15                                           ORDER

16                                           (ECF Nos. 1, 8).

17                                           OBJECTIONS, IF ANY, DUE WITHIN
                                             THIRTY DAYS
18

19        Plaintiff Eric Valencia is incarcerated at the Madera County Jail and proceeds *pro se*

20   and *in forma pauperis* in this civil rights action filed under 42 U.S.C. § 1983. (ECF Nos. 1, 7).

21   The complaint, filed on December 4, 2024, generally alleges that Plaintiff's defense attorneys

22   have conspired with prosecutors in state court proceedings to do him harm.

23        On February 3, 2025, the Court screened the complaint and concluded that Plaintiff

24   failed to state any cognizable claims. (ECF No. 8). The Court gave Plaintiff thirty days to file

25   an amended complaint or to notify the Court that he wanted to stand on his complaint. (*Id.* at

26   12). And the Court warned Plaintiff that "[f]ailure to comply with this order may result in the

27   dismissal of this action." (*Id.*).

28        The thirty-day deadline has passed, and Plaintiff has not filed an amended complaint or

                                        1

otherwise responded to the Court's order. Accordingly, for the reasons below, the Court will recommend that Plaintiff's case be dismissed, without prejudice, for failure to state a claim, failure to prosecute, and failure to comply with a court order.

## I.    SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint, or a portion of it, if the prisoner has raised claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2). Additionally, as Plaintiff is proceeding *in forma pauperis* (ECF No. 7), the Court may screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard.  *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

1

## II.    SUMMARY OF PLAINTIFF'S COMPLAINT

2

Plaintiff's complaint asserts that he is a "pretrial detainee being held in the Madera Co.

3

Jail."[1] (ECF No. 1, p. 2). He sues four Defendants: (1) David Balakian, a private defense

4

attorney; (2) Craig Collins, a public defender; (3) Rachel Cartier, a district attorney, and (4)

5

Sally Moreno, a district attorney.

6

He brings two claims, both premised on Defendants conspiring to violate his "Federal

7

constitutional rights to due process (14th Amend. U.S. Const.) and right to effective assistance

8

of counsel (6th Amend. U.S. Const.)." *Id.* at 2-3.

9

For his first claim, he states as follows:

10

Balakian was hired and soon after fired by Plaintiff for providing ineffective
assistance and conspiring with Prosecutor Rachel Cartier, then acted on
conspiracy, in the secret of an unknown fraudulent defense representation of a
cash amount of $74,020.00 out of a 84,020.00 illegally seized by law
enforcement during an unwarranted and unreasonable search of Plaintiff's home.
(See Madera Co. Case "People v. 74,020.00 MCV91766). Balakian was never
hired to represent or defend the amount seized, nor has Balakian or Cartier
provided any notice of the civil proceedings of said case. Balakian and Cartier
are parties in People v. 74,020.00 as conspired for the purpose of using said
litigation to launder and/or extort stolen money. Additionally, Balakian
conspired with prosecution to wrongfully convict Plaintiff as well as persuade
Plaintiff into transferring the title of his 2022 BMW 330i over to Balakian.

11

12

13

14

15

16

17

18

*Id.* at 3.

19

For his second claim, he states as follows:

20

Collins was court-appointed defense counsel in Plaintiff's state criminal cases.
Collins offered Plaintiff an amplified service for $7,000.00 cash, which Plaintiff
paid. Soon after, Collins accepted an illegally imposed pre-trial terms and
conditions for an alcohol monitor to be placed on Plaintiff while knowing
Plaintiff's blood alcohol count was within legal limits. Collins accepted the
illegally imposed terms and conditions as part of the conspiracy with prosecutor
against Plaintiff. These terms and conditions is what prosecution used as the
"warranted" force to illegally seize the $84,000.00.

21

22

23

24

25

*Id.*

26

Plaintiff seeks $100,000 from each Defendant in what appears to be a request for

27

---

28

[1] For readability, minor alterations, like changing capitalization and correcting misspellings, have been
made to Plaintiff's quotations without indicating each change.

general damages and $100,000 from each Defendant for punitive damages.

## III.    ANALYSIS OF PLAINTIFF'S COMPLAINT

### A.    Section 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City*

4

*of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

**B.    *Younger* Abstention**

As an initial matter, Plaintiff's claims against his attorneys and the prosecutors in his ongoing state cases cannot proceed in Federal court for the reasons described below. Instead, Plaintiff must raise these issues in his pending state court proceedings.

Plaintiff identifies an apparent asset forfeiture case, *People v. $74,020* (MCV091766) in the Madera County Superior Court, which appears to be related to his criminal cases, also presumably in the Madera County Superior Court. From the context of the complaint, these cases appear to be ongoing,[2] which implicates the *Younger* abstention doctrine.

The *Younger* abstention is rooted in the "desire to permit state courts to try state cases free from interference by federal courts." *Younger v. Harris*, 401 U.S. 37, 43 (1971). Thus, "[a]bsent extraordinary circumstances, interests of comity and federalism instruct federal courts to abstain from exercising our jurisdiction in certain circumstances when asked to enjoin ongoing state enforcement proceedings." *Page v. King*, 932 F.3d 898, 901 (9th Cir. 2019) (alterations, citation, and internal quotation marks omitted).

> *Younger* abstention is appropriate when: (1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges; and (4) the requested relief seeks to enjoin or has the practical effect of enjoining the ongoing state judicial proceeding.

---

[2] Among other things, Plaintiff states that he is a pretrial detainee, indicating he has not been convicted of a crime; he mentions Collins improperly accepting pretrial terms and conditions, which indicates that his criminal case (or cases) is still in an early stage; and he does not state that any of these cases have concluded.

*Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) (alterations, citation, and internal quotation marks omitted).

Typically, dismissal is required for <u>*Younger*</u> abstention. *Aiona v. Judiciary of State of Hawaii*, 17 F.3d 1244, 1248 (9th Cir. 1994) (holding that, when abstaining under *Younger*, "a district court must dismiss the federal action . . . [and] there is no discretion to grant injunctive relief") (citation and internal quotation marks omitted). But "federal courts should not dismiss actions where damages are at issue; rather, damages actions should be stayed until the state proceedings are completed." *Gilbertson v. Albright*, 381 F.3d 965, 968 (9th Cir. 2004). Lastly, "Federal courts will not abstain under *Younger* in extraordinary circumstances where irreparable injury can be shown." *Page*, 932 F.3d at 902 (citation and internal quotation marks omitted). "[B]ad faith and harassment" are "the usual prerequisites" to show "the necessary irreparable injury." *Younger*, 401 U.S. at 53.

Consideration of the above legal standards warrants applying the *Younger* abstention doctrine here. First, Plaintiff's complaint indicates that there are ongoing state court proceedings, with Plaintiff alleging that Defendants are conspiring to cause him harm in such cases. *See Mason v. Mercy Med. Ctr.*, No. 2:11-CV-1309-CMK-P, 2012 WL 2457836, at *2 (E.D. Cal. June 26, 2012) ("Plaintiff essentially claims defendants conspired to subject him to a warrantless search and seizure in violation of the Fourth Amendment. Because plaintiff is now incarcerated, it is reasonable to infer that plaintiff is incarcerated as a result of a criminal prosecution relating to evidence discovered by the body cavity search. If a criminal case is still ongoing in any stage, *Younger* abstention would be implicated . . . .").[3]

---

[3] Even if Plaintiff's criminal cases have concluded and he has been convicted, he would still be barred from proceeding on his claims concerning his wrongful conviction, unless and until he shows that his conviction has been invalidated. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (concluding that, to recover damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a § 1983 plaintiff must prove that the conviction or sentence was reversed, expunged, or otherwise invalidated). Notably, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).

Second, the criminal cases, and related asset forfeiture case, implicate important state interests. *See Kelly v. Robinson*, 479 U.S. 36, 49 (1986) ("This Court has recognized that the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief."); *Ames v. Rogers*, No. 2:11-CV-1268 KJM JFM, 2011 WL 5436330, at *2 (E.D. Cal. Nov. 8, 2011) ("State forfeiture proceedings implicate important state interests.").

Third, Plaintiff's state court proceedings afford him the opportunity to raise his challenges in state court. *See Peterson v. Contra Costa Cnty. Superior Ct.*, No. C03-5534 MMC (PR), 2004 WL 443457, at *1 (N.D. Cal. Mar. 2, 2004) ("Plaintiff will be afforded an adequate opportunity to raise his constitutional claims in his criminal trial and on appeal in the California courts."); *Ames*, 2011 WL 5436330, at *2 ("[S]tate forfeiture proceedings provide an opportunity to litigate federal claims.").

Fourth, Plaintiff ultimately seeks a finding that his attorneys and the prosecution are conspiring to harm him in his state court proceedings, which finding would have the practical effect of enjoining, or interfering, with the state court proceedings. *See Jennings v. Leach*, No. EDCV 21-00209 JVS (PVC), 2021 WL 12140262, at *2 (C.D. Cal. Mar. 9, 2021) ("Furthermore, a finding in favor of Plaintiff on his claims, including, but not limited to, his false arrest claim, would have the practical effect of enjoining the ongoing state judicial proceeding.) (internal quotation marks omitted).

Lastly, there are no extraordinary circumstances indicating that Plaintiff will face irreparable injury unless this Court intervenes. As discussed below, while Plaintiff asserts that there is a conspiracy to cause him harm in his state court proceedings, he provides no developed allegations to support such claims.

### C.   Conspiracy Claims

Although Plaintiff may not proceed with his § 1983 claims for the reasons discussed above, there are other legal bars present. Notably, the complaint fails to allege that his attorneys acted under color of state law, and the prosecutors are entitled to prosecutorial immunity.

### 1. Color of state law requirement

As noted above, the text of § 1983 requires that a defendant act under color of law. Thus, "[t]o state a section 1983 claim, a plaintiff *must allege facts* which show a deprivation of a right, privilege or immunity secured by the Constitution or federal law *by a person acting under color of state law*." *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991) (emphasis added); *Davis v. John*, 485 F. Supp. 3d 1207, 1216 (C.D. Cal. 2020) ("It is axiomatic that a plaintiff asserting a section 1983 claim must allege that the defendant acted under color of state law when performing the challenged acts.").

Generally, neither a public defender (such as Defendant Collins) nor a private attorney (such as Defendant Balakian) act under color of law when performing legal services. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *Campbell v. Geragos*, No. 1:10-CV-02231-LJO-GBC (PC), 2010 WL 5244677, at *1 (E.D. Cal. Dec. 9, 2010), *report and recommendation adopted*, 2011 WL 300159 (E.D. Cal. Jan. 27, 2011) (concluding that allegations against private attorneys did not implicate color-of-law requirement).

However, there is a limited exception. The Supreme Court has "held that an otherwise private person acts under color of state law when engaged in a conspiracy with state officials to deprive another of federal rights" and thus allegations that public defenders conspired with state officials to secure a criminal conviction were adequate to allege that they acted under color of law. *Tower v. Glover*, 467 U.S. 914, 920 (1984) (internal citation and quotation marks omitted).

While Plaintiff repeatedly states that his attorneys conspired with prosecutors to do him harm in state court cases, his allegations are lacking.

To state a conspiracy claim, a plaintiff must allege "(1) the existence of an express or implied agreement among the defendant . . . to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement." *Ting v. United States*, 927 F.2d 1504, 1512 (9th Cir. 1991); *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d

8

1539, 1540–41 (9th Cir. 1989) ("To prove a conspiracy between the state and private parties
under section 1983, [a plaintiff] must show an agreement or meeting of the minds' to violate
constitutional rights"; further, "each participant in the conspiracy need not know the exact
details of the plan, but each participant must at least share the common objective of the
conspiracy.") (internal citation and quotation marks omitted). "[C]onclusory allegations" are
insufficient to support a conspiracy claim; rather, "[t]o state a claim for a conspiracy to violate
one's constitutional rights under section 1983, the plaintiff must state specific facts to support
the existence of the claimed conspiracy." *Burns v. Cnty. of King*, 883 F.2d 819, 821 (9th Cir.
1989).

Plaintiff offers no specific facts here to show a conspiracy between his attorneys and the
prosecutors. Although he repeatedly asserts that a conspiracy existed—*e.g.*, Balkian
"conspire[ed] with Prosecutor Rachel Cartier" and Collins was part of "conspiracy with
prosecutor"—he does not provide the who, what, where, and when type facts to show any
agreement between Defendants. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 937 (9th Cir.
2012) ("The conclusory conspiracy allegations in the original complaint do not define the scope
of any conspiracy involving Thomas, what role he had, or when or how the conspiracy
operated."). For example, he does not explain the nature of any agreement between Balakian
and Cartier to "launder" or "extort stolen money" in what appears to be an asset forfeiture case,
nor does he give a basis to conclude that Collins conspired with the prosecution to require an
"alcohol monitor" condition in his criminal cases.

Accordingly, his allegations are insufficient to state any conspiracy claim, which
likewise means that there is no basis to conclude that his attorneys were state actors. *Brown v.
Duran*, No. CIV S-11-0930 WBS, 2011 WL 4088697, at *2 (E.D. Cal. Sept. 13, 2011)
("Plaintiff's vague allegation that a state court judge he names 'either conspired with my public
defender or conspired to cover up his actions....' (SAC, p. 6), however, simply does not make a
colorable showing of the requisite conspiracy that would serve to transmute the defendants into
state actors who may be sued under § 1983."). Rather than any conspiracy, Plaintiff's
allegations more closely indicate that he is simply dissatisfied with the quality of his attorneys'

9

performances in his state court cases. However, "allegations of general, legal malpractice fail to state a cognizable claim under § 1983 and must be dismissed." *Peterson v. Petty*, No. CIV S-10-2193-JAM-DAD(P), 2010 WL 3505095, at *2 (E.D. Cal. Sept. 3, 2010).

### 2. Prosecutorial immunity

Because Plaintiff is attempting to sue prosecutors (Defendant Cartier and Defendant Moreno), the Court also addresses prosecutorial immunity. The Ninth Circuit explained this immunity as follows:

> Absolute immunity is generally accorded to judges and prosecutors functioning in their official capacities. *Stump v. Sparkman,* 435 U.S. 349, 364, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (holding that state circuit judge is immune from suit for all actions within his jurisdiction); *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (holding that state prosecutor had absolute immunity for initiation and pursuit of criminal prosecutions, including presentation of case at trial). This immunity reflects the long-standing "general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley v. Fisher,* 13 Wall. 335, 347, 20 L.Ed. 646 (1871).
>
> Recognizing these considerations, courts have extended the protections of absolute immunity to qualifying state officials sued under 42 U.S.C. § 1983. *Miller v. Gammie,* 335 F.3d 889, 895-96 (9th Cir.2003) (explaining that though § 1983 does not include a defense of immunity, "the Supreme Court has recognized that when Congress enacted § 1983, it was aware of a well-established and well-understood common-law tradition that extended absolute immunity to individuals performing functions necessary to the judicial process" (citing *Forrester v. White,* 484 U.S. 219, 225–26 (1988) (superseded by statute))); *Buckley v. Fitzsimmons,* 509 U.S. 259, 268–69, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Indeed, judicial immunity from § 1983 suits is "viewed as necessary to protect the judicial process." *Burns v. Reed,* 500 U.S. 478, 485, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). Likewise, the protections of absolute immunity accorded prosecutors reflect the "'concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust.'" *Id.* (quoting *Imbler,* 424 U.S. at 423, 96 S.Ct. 984).

*Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 922-923 (9th Cir. 2004); *see also Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) ("A state prosecutor is entitled to absolute immunity from liability under § 1983 for violating a person's federal constitutional rights when

he or she engages in activities intimately associated with the judicial phase of the criminal process.") (citation and internal quotation marks omitted).

Here, Plaintiff alleges that Cartier and Moreno have taken actions, in their capacity as prosecutors, to harm him in his state court cases, including attempts to wrongfully convict him of crimes. But based on the legal standards above, there are entitled to prosecutorial immunity. *See Milstein v. Cooley*, 257 F.3d 1004, 1008 (9th Cir. 2001) (noting that prosecutorial "immunity covers the knowing use of false testimony at trial, the suppression of exculpatory evidence, and malicious prosecution"); *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) ("We therefore hold that a conspiracy between judge and prosecutor to predetermine the outcome of a judicial proceeding, while clearly improper, nevertheless does not pierce the immunity extended to judges and prosecutors.").

## IV.    FAILURE TO PROSECUTE AND COMPLY WITH COURT ORDERS

The Court will likewise recommend dismissal based on Plaintiff's failure to prosecute this case and to comply with the Court's screening order.

> In determining whether to dismiss a[n] [action] for failure to prosecute or failure to comply with a court order, the Court must weigh the following factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits.

*Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992)).

"'The public's interest in expeditious resolution of litigation always favors dismissal.'" *Id.* (quoting *Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999)). Therefore, the first factor weighs in favor of dismissal.

As to the Court's need to manage its docket, "[t]he trial judge is in the best position to determine whether the delay in a particular case interferes with docket management and the public interest. . . . It is incumbent upon the Court to manage its docket without being subject to routine noncompliance of litigants. . . ." *Id.* (citations omitted). Plaintiff has failed to respond to the Court's screening order. This failure to respond is delaying the case and interfering with

11

docket management. Therefore, the second factor weighs in favor of dismissal.

Turning to the risk of prejudice, "pendency of a lawsuit is not sufficiently prejudicial in and of itself to warrant dismissal." *Id.* (citing *Yourish*, 191 F.3d at 991). However, "delay inherently increases the risk that witnesses' memories will fade and evidence will become stale," *id.* at 643, and it is Plaintiff's failure to comply with a court order and to prosecute this case that is causing delay. Therefore, the third factor weighs in favor of dismissal.

As for the availability of lesser sanctions, given that Plaintiff has chosen not to prosecute this action and has failed to comply with the Court's order, despite being warned of possible dismissal, there is little available to the Court which would constitute a satisfactory lesser sanction while protecting the Court from further unnecessary expenditure of its scarce resources. Considering Plaintiff's *in forma pauperis* status, it appears that monetary sanctions are of little use to prompt him to comply with future orders. And given the stage of these proceedings, the preclusion of evidence or witnesses is not available. Lastly, because the dismissal being recommended in this case is without prejudice, the Court is stopping short of using the harshest possible sanction of dismissal with prejudice. Therefore, the fourth factor weighs in favor of dismissal.

Finally, because public policy favors disposition on the merits, this final factor weighs against dismissal. *Id.*

After weighing the factors, the Court finds that dismissal is appropriate.

## V.    CONCLUSION, ORDER, AND RECOMMENDATIONS

Accordingly, IT IS ORDERED that the Clerk of Court is respectfully directed to assign a District Judge to this case.

And based on the forgoing, IT IS RECOMMENDED as follows:

1.    This action be dismissed, without prejudice, for failure to state a claim, failure to prosecute, and failure to comply with a court order; and

2.    The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty

(30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any objections shall be limited to no more than fifteen (15) pages, including exhibits. Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **March 21, 2025**                  /s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE